**Affirmed as Modified; Opinion Filed December 3, 2018.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-18-00242-CR

**DARVINAL R. CHANDLER, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the Criminal District Court No. 6**
**Dallas County, Texas**
**Trial Court Cause No. F15-75696-X**

# MEMORANDUM OPINION

Before Justices Myers, Evans, and Brown
Opinion by Justice Evans

Appellant Darvinal R. Chandler appeals from the judgment adjudicating him guilty of murder and his accompanying sentence of forty years' imprisonment. Appellant contends he is entitled to a new trial because the trial court admitted evidence that allegedly lacked authenticity. The State raises a cross-issue that the judgment should be reformed to reflect the jury's affirmative deadly weapon finding. We modify the trial court's judgment and affirm as modified.

## BACKGROUND

On May 29, 2015, Victor Cerda and Jonathan Castro were driving between two hotels—the Suburban Hotel/Orange Extended Stay (Suburban Hotel) and the Baymont Inn—to purchase and use drugs. Late in the evening, Cerda and Castro picked up a woman called Jamaica and took her to the Suburban Hotel. Jamaica came out of the Suburban Hotel with appellant and his one-

year old infant son. Cerda, Castro, Jamaica, appellant and the infant got into a car to drive back to the Baymont Inn. Upon their return to the Suburban Hotel, Cerda and Jamaica began to argue. Cerda testified at trial that appellant got upset and punched him. Cerda further testified Castro told appellant and Jamaica they were leaving and appellant began fighting with Castro. Appellant then ran into the Suburban Hotel where he was a registered guest and returned with a gun. Cerda testified appellant pointed his gun through the passenger side and fired one shot into Castro killing him.

At trial, Maria Del Socorro Mariano, a former housekeeper of the Suburban Hotel, testified that she found a "metal box" in appellant's hotel room. Mariano further testified she reported what she found to the hotel manager and placed the box in a locked room until it was turned over to the police.

Stephen Cleary, a detective with the Dallas police department, testified part of his job included collecting evidence and logging it into the property room. Detective Cleary testified a safe and its contents from the Suburban Hotel were brought to him to process. Counsel for the State moved to admit the safe and its contents and appellant's counsel stated he objected or wanted to have the "Court make a clarification on its ruling about the chain of custody." The trial court then sustained the objection.

The State then called Steve David, a homicide detective with the Dallas police department, to the stand. Detective David testified he collected a safe found in appellant's room at the Suburban Hotel. He further testified the hotel housekeeper found the safe and turned it into the hotel office. Detective David testified he collected the safe from the housekeeper. After he collected the safe, Detective David testified he gave it to Detective Stephen Cleary and obtained a search warrant. Detective David conceded he did not put any identifying marks on the safe before

turning it over to Detective Cleary, but he also testified the safe never left his possession between the time he collected it and the time he turned it over.

The State then resumed its questioning of Detective Cleary and defense counsel stated, "I am going to object or either just have the Court make a clarification on its ruling about the chain of custody, with the Court overruling that objection now or sustain that objection." The court then overruled the objection. Detective Cleary then testified he found cartridges or unfired bullets, loose change, and clear blue baggies in the safe.[1] Detective Cleary also identified the safe offered into evidence as the same safe he went through and logged into the property room.

Susan Kerr, the forensic manager at the Dallas police department, testified she examined the bullet from Castro's autopsy and prepared a firearms analysis report. Kerr received all thirteen cartridges from the safe and was asked to determine if the bullet from the autopsy was similar to any of the bullets loaded into the cartridges found in the safe. Kerr testified the bullet caliber of the autopsy bullet was a .38 caliber and she was also able to document the number of land and groove impressions of the bullet. Based on this analysis, Kerr determined the autopsy bullet could have been loaded into the same type of ammunition as the Remington brand ammunition that was found in the safe.

Following the trial, the jury found appellant guilty of murder and assessed punishment at forty years' imprisonment. Appellant timely filed a notice of appeal.

**ANALYSIS**

**A. Chain of Custody**

In his sole issue, appellant contends the trial court erred in allowing the State to admit the safe into evidence. Appellant further contends Kerr's testimony that the autopsy bullet could have

---

[1] Cleary testified that the unfired bullets in the safe included ten Remington .38 Special cartridges, one Speer .38 cartridge, and two Hornady .357 Magnum cartridges.

been loaded into the same type of ammunition as that found in the safe "provided a crucial link from the fatal bullet to the safe found in Appellant's room." Without evidence of identification marks on the safe to ascertain it was the same safe, appellant argues the trial court erred in allowing it to be admitted and the error substantially affected his rights by affecting the verdict.

A trial court's decision to admit or exclude evidence is viewed under an abuse of discretion standard. *Torres v. State*, 71 S.W.3d 758, 760 (Tex. Crim. App. 2002). A trial court abuses its discretion when its decision lies outside the zone of reasonable disagreement. *Green v. State*, 934 S.W.2d 92, 102 (Tex. Crim. App. 1996). In addition, although the evidentiary rules do not specifically address proper chain of custody, the rules provide identification for admissibility purposes is satisfied if the evidence is sufficient to support a finding that the matter in question is what the proponent claims. *See Druery v. State,* 225 S.W.3d 491, 503 (Tex. Crim. App. 2007); *see also* TEX. R. EVID. 901. The trial judge does not abuse his or her discretion in admitting evidence where he or she reasonably believes a reasonable juror could find that the evidence has been authenticated or identified. *Id.* at 502.

As described above, the State did establish the chain of custody of the safe: (1) Mariano testified she found the safe and gave it to Detective David; (2) Detective David testified that he took the safe from Mariano and gave it to Detective Cleary; and (3) Detective Cleary testified he processed the safe and its contents and identified the safe as the same safe he was asked to open by Detective David. Appellant, however, asserts in his brief the safe *could* have been switched or the contents of the safe *could* have been altered while it was in Detective David's possession. We find this argument unpersuasive as "[p]roof of the beginning and end of a chain of custody will support the admission of the evidence in the absence of any evidence of tampering or alteration." *See Dossett v. State*, 216 S.W.3d 7, 17 (Tex. App.—San Antonio 2006, pet ref'd). Further, gaps or theoretical breaches in the chain of custody do not affect the admissibility of the evidence,

absent affirmative evidence of tampering or commingling. *Id.*; *see also Marquez v. State*, No. 05-07-00635-CR, 2008 WL 2043044, at *5 (Tex. App.—Dallas May 14, 2008, no pet.) (memo op., not designated for publication). A showing of the *possibility* of tampering or commingling is not sufficient to bar admission of the evidence, and only goes to the weight of the evidence. *Id.*

Here, appellant did not offer any affirmative evidence of tampering only a possibility existed such tampering could have taken place. Accordingly, such a theoretical breach in the chain of custody does not affect the admission of the safe, only the weight given to such evidence. *Id.* As such, we cannot conclude the trial court abused its discretion in admitting the safe.

Even if we determined it was improperly admitted, appellant has failed to establish harm. *See* TEX. R. APP. P. 44.2(b). Although he asserts he was harmed because the safe contained the same type of ammunition that was recovered from the autopsy, we cannot conclude this alone would have influenced the jury's finding of guilt. As stated above, there was other evidence linking appellant to the crime including Cerda's eyewitness testimony. Accordingly, appellant's sole point is overruled.

### B. Modification of Judgment

In a cross-point, the State asserts there was an affirmative finding by the jury a deadly weapon was used or exhibited during the commission of the offense. Noting the finding was omitted from the written judgment, the State requests the judgment be reformed to correctly reflect such finding.

The trier of fact is responsible for making the affirmative finding concerning the use or exhibition of a deadly weapon. *See Asberry v. State*, 813 S.W.2d 526, 529 (Tex. App.—Dallas 1991, pet. ref'd). The affirmative finding by a jury can be made in three different ways: (1) by a finding of guilty "as charged in the indictment" when the indictment specifically characterizes the weapon as a "deadly weapon;" (2) by a finding of guilty "as charged in the indictment" when the

weapon named in the indictment is a deadly weapon as a matter of law; or (3) by an affirmative finding to a special issue submitted to the jury on whether the weapon used by the defendant was a deadly weapon. *Id.* Here, the jury found appellant guilty of murder "as charged in the indictment" and the indictment alleged the use of a "firearm, a deadly weapon" in the commission of the offense. Therefore, the jury made an affirmative deadly weapon finding. The judgment, however, contains the entry "N/A" in the "Findings on Deadly Weapon" field. This Court has the power to modify incorrect judgments when the necessary data and information is available to do so. *See* Tex. R. App. P. 43.2(b); *Asberry*, 813 S.W.2d at 529. Accordingly, we sustain the State's cross-point and modify the trial court's judgment to read "Yes, a Firearm" in the "Findings on Deadly Weapon" field.

## CONCLUSION

On the record of this case, we modify the trial court's judgment and affirm as modified.


/David Evans/
DAVID EVANS
JUSTICE


Do Not Publish
TEX. R. APP. P. 47
180242F.U05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

DARVINAL R. CHANDLER, Appellant

No. 05-18-00242-CR      V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court No. 6, Dallas County, Texas
Trial Court Cause No. F15-75696-X.
Opinion delivered by Justice Evans.
Justices Myers and Brown participating.

Based on the Court's opinion of this date, the judgment of the trial court is **MODIFIED** as follows:

The "N/A" reference in the "Findings on Deadly Weapon" field is replaced with "Yes, a Firearm."

It is **ORDERED** that, as modified, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 3rd day of December, 2018.